U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

FEB 0 8 2006

ROBERT H. SHEMWELL, CLERK
BY _MBS_____
              DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| GROVER HAWKES | CIVIL ACTION NO. 05-501 |
| VERSUS | JUDGE LITTLE |
| COMMISSIONER OF SOCIAL SECURITY | MAGISTRATE JUDGE KIRK |

## REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

This case comes before the Court for a review of the final decision of the Commissioner of Social Security ("Commissioner"), denying Grover Hawkes ("Hawkes") Disability Income Benefits ("DIB") under the Social Security Act ("SSA"). 42 U.S.C. § 1381(a). The issue to be decided is whether substantial evidence in the record supports the finding of the Administrative Law Judge ("ALJ") that Hawkes is not disabled and not entitled to DIB benefits.

Hawkes was fifty-four years of age at the time of his administrative hearing. (R. 207.) His past work experience includes work as an electronics technician for almost twenty (20) years. At the time of the hearing, Hawkes was attending college and not working. Hawkes filed an application for DIB on December 17, 2002, alleging a disability onset date of June 11, 2002, due to back and leg pain. (R. 65-67.) At the hearing, Hawkes also claimed that he was disabled due to depression. (R. 214.) Hawkes' claim was denied by Disability Determination Services, and a request for hearing was timely made. A hearing was conducted on

1

January 14, 2004, at which Hawkes appeared and testified. (R. 203-235.) Suzanne Douglas, a Vocation Expert, also appeared and testified. The ALJ issued a decision unfavorable to the claimant on August 25, 2004. The Appeals Council denied Hawkes' request for review, and the instant appeal was filed.

To qualify for disability insurance benefits, a claimant must meet certain insured status requirements, be under age 65, file an application for such benefits, and be under a disability as defined by the Social Security Act. 42 U.S.C. 416(i), 423. Establishment of a disability is contingent upon two findings. First, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death, or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. 423 (d)(1)(A). Second, the impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. 423(d)(2).

## Scope of Review

In considering Social Security appeals such as the one that is presently before the Court, the Court is limited by 42 U.S.C. §405(g) to a determination of whether substantial evidence exists in the record to support the Commissioner's decision and whether the decision comports with relevant legal standards. McQueen v. Apfel, 168 F.3d 152, 157 (5th C. 1999). For the evidence to be

substantial, it must be relevant and sufficient for a reasonable mind to support a conclusion; it must be more than a scintilla but need not be a preponderance. Falco v. Shalala, 27 F.3d 160, 162 (5th Cir. 1994), citing Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 482 (1971). Finding substantial evidence does not involve a simple search of the record for isolated bits of evidence which support the Commissioner's decision but must include a scrutiny of the record as a whole. The substantiality of the evidence must take into account whatever in the record fairly detracts from its weight. Singletary v. Bowen, 798 F.2d 818, 823 (5th Cir. 1986).

A court reviewing the Commissioner's decision may not retry factual issues, re-weigh evidence, or substitute its judgment for that of the fact-finder. Fraga v. Bowen, 810 F.2d 1296, 1302 (5th Cir. 1987); Dellolio v. Heckler, 705 F.2d 123, 125 (5th Cir. 1983). The resolution of conflicting evidence and credibility choices is for the Commissioner and the ALJ, rather than the court. Allen v. Schweiker, 642 F.2d 799, 801 (5th Cir. 1981). Also, Anthony v. Sullivan, 954 F.2d 289, 295 (5th Cir. 1992). The court does have authority, however, to set aside factual findings which are not supported by substantial evidence and to correct errors of law. Dellolio, 705 F.2d at 125. But, to make a finding that substantial evidence does not exist, a court must conclude that there is a "conspicuous absence of credible choices" or "no contrary medical

evidence." Johnson v. Bowen, 864 F.2d 340 (5th Cir. 1988); Dellolio, 705 F.2d at 125.

## Issues

Hawkes raises the following issues for review:

(1) Whether the ALJ erred by failing to properly apply 20 C.F.R. 404.1527 and failing to give proper weight to the opinions of Dr. I.C. Turnley and Dr. Andrew Wilson without stating reasons for disregarding their opinions;

(2) Whether the ALJ erred in finding that Hawkes was capable of a significant range of light duty work; and

(3) Whether the ALJ erred in applying Medical Vocational Rule 202.07 rather than 202.06.

## Factual Background

Mr. Hawkes was fifty-four years old at the time of the hearing. He filed for DIB due to back and leg pain. Dr. I.C. Turnley examined Hawkes on June 18, 2002, for complaints of back pain, spasms, and leg weakness. (R. 178.) Hawkes also reported some mild depression. (R. 178.) Dr. Turnley noted right side sciatica with intermittent spasms. The doctor noted that Hawkes had stopped working on May 31, 2002, because of the pain he was experiencing. A June, 2002 CT scan of his lumbar spine revealed very mild asymmetric disc bulging on the left at L5/S1 with possible S1 radiculopathy. (R. 177, 179.)

Dr. Turnley referred Hawkes to Dr. G. Andrew Wilson, who conducted a neurosurgical consultation July 16, 2002. (R. 174-177.) Hawkes complained of lower extremity pain due to spraining his ankle while stepping off of a ladder in April 2002. (R. 174.)

Hawkes stated that the morning after he sprained his left ankle, he had extreme right leg pain. (R. 174.) He had significant pain with standing or walking, which was relieved when resting. Hawkes had developed a dull aching pain in his lower back over the three weeks prior to his evaluation by Dr. Wilson. Upon physical examination, Hawkes had a normal stance and unremarkable gait with good heel/toe walking. (R. 175.) There was no point tenderness upon palpitation of the lumbosacral spine, and no paraspinous tenderness was noted. (R. 175.) Hawkes had full range of motion of the lumbar spine. (R. 176.) There was no sciatic notch tenderness. Range of motion and motor tone of the right and left lower extremities was normal, and there was no muscular atrophy. (R. 176.) There was decreased sensation in the S1 dermatome on the left hand side to pin prick, and heightened sensitivity to pin prick in the L4 and L5 dermatome on the left side. (R. 176.) Dr. Wilson offered a differential diagnosis of possible S1 radiculopathy, and suggested a myelogram and post-myelogram CT of the lumbar spine with flexion and extension films. (R. 177.)

Hawkes underwent the myelogram and post-myelogram CT recommended by Dr. Wilson. Dr. Wilson noted that the films showed no evidence of any gross instability or significant compression. (R. 173.) Dr. Wilson then ordered a bone scan and EMG/NCS and instructed Hawkes to return after those tests. The EMG/NCS tests were normal as to both the right and left lower extremities. (R.

172.) His bone scan was normal, as well. (R. 170.) Dr. Turnley then suggested an MRI of the lumbar spine to ensure that nothing was missed on the CT/myelogram. (R. 170.)

The MRI revealed a small annular tear with a small protrusion at L5/S1 contacting the left S1 nerve root. (R. 169.) Dr. Turnley offered a differential diagnosis of S1 radiculopathy, and prescribed a selective nerve root block on the right side. (R. 169.) Hawkes experienced significant improvement from the nerve root block on his right side, but still complained of pain on the left side. (R. 168.)

A consultative examination was performed on February 15, 2003. Hawkes reported to the examiner that he had done physical therapy for his back pain but that the therapy worsened the pain. After examination and review of Hawkes' history, the doctor found that Hawkes had the ability to sit, stand, walk, lift, hear, speak, and handle objects without any limitations. (R. 180-183.)

On July 11, 2003, Dr. Turnley noted that Hawkes "dwells on problems unnecessarily" and was tired of attending school. (R. 197.) Hawkes complained of low back pain, mostly at night. Dr. Turnley prescribed Ambien, Paxil, Tylenol #3, Vicodin, Bextra, and Robaxin over the course of the year in 2003. (R. 197.)

On March 10, 2004, Dr. Wheat performed a consultative eye examination. (R. 198.) Hawkes had 20/20 vision in the left eye, but wore a prosthetic eye on the right side, where he was blind.

According to Dr. Wheat, Hawkes was able to read fine and large print, handle and work with objects, drive an automobile, and operate machinery, but could not avoid people approaching from the side. Dr. Wheat opined that Hawkes should wear safety glasses and do work that is safe for an individual with one eye. (R. 198.)

Dr. Turnley, a family practitioner, prepared a statement of disability on July 28, 2004, while Hawkes' claim was pending before the Appeals Council. (R. 8, 199-202.) In this statement, Dr. Turnley opined that Hawkes had "degenerated L5S1 with injury to L5S1 disc." (R. 199.) Turnley noted that treatment for Hawkes injury was conservative, and that no surgery was recommended at the time. Still, Turnley opined that Hawkes could sit for only 2 hours in an eight hour workday and could drive for only 1 hour in an eight hour workday. He found that Hawkes could lift a maximum of 10 pounds, and could only life that amount occasionally. The doctor opined that Hawkes could never push or pull any amount of weight, could never reach above shoulder level, at waist level, or below waist level, and could never climb, balance, stoop, kneel, crouch, or crawl. Turnley stated that Hawkes could walk for only 5-10 minutes. He noted that, psychologically, Hawkes was functioning well in all areas and was occupationally and socially effective. (R. 201.)

<u>Issue No. 1</u>: Whether the ALJ erred by failing to properly apply 20 C.F.R. 404.1527 and failing to give proper weight to the opinions of Dr. I.C. Turnley and Dr. Andrew Wilson without stating reasons for

7

disregarding their opinions.

First, Hawkes claims that the ALJ failed to give proper weight to the opinions of Drs. Turnley and Wilson. Hawkes complains that the ALJ refered to his condition as a "disc bulge" instead of an "annular tear." Dr. Wilson reported on July 16, 2002, that a CT of the lumbar spine showed a mildy eccentric disc bulge at L5-S1. (R. 177.) On September 4, 2002, Wilson indicated that an MRI revealed a small annular tear with a small bulge at L5/S1 contacting the left S1 nerve root. (R. 169.) The fact that the ALJ did not state that the annular tear caused the disc to bulge, which in turn was impinging on the nerve, is of no consequence. The result is the same - - radiculopathy, which was recognized by the ALJ as a severe impairment.

Hawkes also complains that the ALJ only quoted a portion of Dr. Wilson's October 16, 2002, report. The ALJ noted that Dr. Wilson offered Hawkes a lumbar fusion if he continued primarily with back pain. (R. 16.) Hawkes complains that Dr. Wilson's report also mentioned a more complicated surgery. Dr. Wilson stated, "Since the patient did get significant relief with the selective nerve root block at S1 on the right hand side, we offered the patient a lumbar fusion if he continues primarily with back pain. However, if he continues primarily with lower extremity pain because he does complain of both, we will consider foraminotomies bilaterally." (R. 168.) This omission is insignificant. The ALJ

8

cannot be expected to quote every doctor's report in its entirety. Furthermore, the report does not state that such surgery would be necessary. Rather, the doctor stated that *if* Hawkes continued with lower extremity pain, *then* he would *consider* such procedure. (R. 168.)

Next, Hawkes complains that the ALJ did not give proper weight to the treating physician's opinion regarding Hawkes' residual functional capacity. The ALJ found that Hawkes had a severe impairment due to radiculopathy caused by the impingement of Hawkes' disc on the nerve. (R. 18.) Hawkes recognized that the ALJ adopted Dr. Wilson's position regarding the radiculopathy, but complains that the ALJ rejected the functional limitations set forth by Dr. Turnley in a form called "Attending Physician's Statement of Disability," prepared by The Hartford.

First, Hawkes complains that the ALJ rejected, without proper explanation, Dr. Turnley's opinion set forth in The Hartford form. The completed form was actually submitted to the Appeals Council *subsequent* to the ALJ's ruling. Therefore, the ALJ did not reject the limitations set forth therein without proper explanation.

Still, the Court must consider new evidence submitted to the Appeals Council in determining whether the Commissioner's decision is supported by substantial evidence. See Higginbotham v. Barnhart, 405 F.3d 332, 337-228 (5th Cir. 2005). In this case, the Appeals Council received the "Attending Physician's Statement of

9

Disability" completed by Dr. Turnley and dated July 28, 2004. As noted above, Dr. Turnley opined in that disability statement that Hawkes had "degenerated L5S1 with injury to L5S1 disc." (R. 199.) Turnley noted that treatment for Hawkes' injury was conservative, and that *no surgery was recommended* at the time. Nonetheless, Turnley opined, without explanation, that Hawkes could sit for only 2 hours in an eight hour workday and could drive for only 1 hour in an eight hour workday. The doctor claimed that Hawkes could lift a maximum of 10 pounds, and could only lift that amount occasionally. The doctor opined that Hawkes could never push or pull any amount of weight, could never reach above shoulder level, at waist level, or below waist level, and could never climb, balance, stoop, kneel, crouch, or crawl. Turnley stated that Hawkes could walk for only 5-10 minutes. He noted that, psychologically, Hawkes was functioning well in all areas and was occupationally and socially effective. (R. 201.) The family practitioner's opinion is significantly different from that of Dr. Wilson, a neurosurgeon, who is Hawkes' other treating physician.

According to Dr. Wilson, upon physical examination, Hawkes had a normal stance and unremarkable gait with good heel/toe walking. (R. 175.) There was no point tenderness upon palpitation of the lumbosacral spine, and no paraspinous tenderness was noted. (R. 175.) Hawkes had full range of motion of the lumbar spine. (R. 176.) There was no sciatic notch tenderness. Range of motion and

motor tone of the right and left lower extremities was normal, and there was no muscular atrophy. (R. 176.)

Additionally, the consultative examination report indicates that Hawkes ambulated well and without difficulty, could get on and off of the chair and table without difficulty, and could dress/undress without difficulty. (R. 181.) The examining physician also found that Hawkes had a disc protrusion, but that physical examination of the lumbar spine was essentially normal. (R. 182.) Hawkes had a normal gait, could walk on heels and toes without difficulty, and had full range of motion of his back and neck without any limitations. (R. 183.)

Hawkes stated that he had no difficulty bathing, shaving, or getting dressed. (R. 92.) He stated that he could drive, but that standing hurt his back. (R. 94.) He could sit through several hours of classes a day and could study and maintain good grades in school. Dr. Turnley opined in The Hartford form that Hawkes had numerous physical restrictions and limitations. However, that is inconsistent with Turnley's own treatment notes. None of those notes reflect any problems with, or limitations on, Hawkes' ability to lift, pull, push, squat, climb, balance, walk, drive, sit, crouch, or crawl. The only "limitation" mentioned in Dr. Turnley's notes is that Hawkes sometimes had trouble sleeping, for which Dr. Turnley prescribed Ambien. (R. 197.) Certainly if Dr. Turnley believed that Hawkes was as severely limited in his abilities as

set forth in The Hartford form, he would have noted as much in his file. There is little to no evidence in the record to support the general practitioner's findings on The Hartford "statement of disability" form.

Issue No. 2:   Whether the ALJ erred in finding that Hawkes was capable of a significant range of light duty work.

Hawkes claims that the ALJ erred in finding a residual functional capacity ("RFC") of light work rather than sedentary work. (Doc. 10, p.10.) Specifically, Hawkes states that the ALJ failed to consider pain in determining his RFC. The ALJ did, in fact, consider Hawkes' complaints of pain, as stated in the ALJ's decision. (R. 18-20.) The ALJ noted that, in making an RFC assessment, an ALJ must consider all symptoms, including pain, and the extent to which the symptoms are reasonably consistent with the objective medical evidence. (R. 18.) Here, the ALJ found that Hawkes' assertions regarding his limitations were not entirely credible. (R. 19.) The ALJ noted that Hawkes was able to drive to another town to attend college classes, could sit through three hours of class a day, and had the energy and concentration to study and make good grades. (R. 19.)

Hawkes' allegations of severe pain are not supported by the medical evidence. As noted above, physical examination of Hawkes showed that he had a normal gait, no significant restrictions of range of motion, and no muscle spasms. (R. 175, 183.) As the ALJ

pointed out, Hawkes exhibited no atrophy or overall poor health, which are often seen in individuals who suffer from severe and chronic back pain. (R. 19.) The ALJ acknowledged that certainly Hawkes suffered from some pain and he should avoid heavy exertional work. However, the ALJ found that Hawkes was capable of performing a significant range of light work. There is substantial evidence in the record (in the reports and notes of Drs. Turnley, Wilson, and Chico, the consultative examiner) to support the Commisioner's decision. Hawkes' argument that the ALJ neglected to consider pain in determining the RFC has no merit.

<u>Issue No. 3</u>: Whether the ALJ erred in applying Medical Vocational Rule 202.07 rather than 202.06.

Finally Hawkes argues that the ALJ erred in applying Rule 202.07 to Hawkes' claim. The ALJ actually relied on Rule 202.15, which applies to individuals *approaching advanced age*, to determine that Hawkes was not disabled. However, The ALJ also analyzed the claim under 202.07, which applies to individuals who have already reached advanced age, since Hawkes, who was 54 at the time of the hearing, would turn 55 later that year.[1] (R. 20.)

Specifically, with regard to Rule 202.07, the ALJ noted, in a footnote, that Hawkes had transferable skills and education that

---

[1] A high school graduate of advanced age with skilled or semi-skilled work experience, with skills that are transferable, must be found not disabled. 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 202.07.

provided direct entry into skilled work. Hawkes argues that, while he has transferable skills, the transferability of those skills is compromised due to his lack of depth perception. Thus, he argues that the ALJ's finding is "clearly erroneous." (Doc. #10, p.11.)

The standard the district court uses in reviewing the Commissioner's decision is whether or not substantial evidence in the record supports the decision. A court reviewing the Commissioner's decision may not retry factual issues, re-weigh evidence, or substitute its judgment for that of the fact-finder. Fraga v. Bowen, 810 F.2d 1296, 1302 (5th Cir. 1987); Dellolio v. Heckler, 705 F.2d 123, 125 (5th Cir. 1983). Here, the ALJ acknowledged Hawkes' visual impairment, but found that he had the ability to perform light work that does not require depth perception. (R. 21.) The ALJ found that a lack of depth perception prevented Hawkes from performing the full range of light work, but that there was a significant number of jobs that Hawkes could still perform, such as electric meter repairman or electrical instrument repairman. (R. 21.) The record, including the Vocational Expert's testimony, contains substantial evidence to support this finding.

Therefore, for the reasons set forth herein, I find that there is substantial evidence in the record to support the Commissioner's decision, and that the decision is consistent with relevant legal standards.

## Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that Hawkes' appeal be DENIED AND DISMISSED WITH PREJUDICE.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this ___ day of February, 2006.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE